Filed 1/15/26  P. v. Navarro-Gutierrez CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sutter)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>AMADOR NAVARRO-GUTIERREZ,<br><br>    Defendant and Appellant. | C102725<br><br>(Super. Ct. No. CRF11-0000144-01) |

Defendant Amador Navarro-Gutierrez appeals from the trial court's denial of his motion to vacate his convictions for selling or transporting methamphetamine (Health & Saf. Code, § 11379, subd. (a)).  Defendant contends he did not meaningfully understand the convictions would result in his deportation from the United States and, had he known, defendant would not have pleaded no contest to the charges.  We affirm the judgment.

FACTS AND HISTORY OF THE PROCEEDINGS

2011 Conviction

In January 2011, the People charged defendant with four counts of selling or transporting methamphetamine (Health & Saf. Code, § 11379, subd. (a) [counts 1-4]) and

1

one count of possessing methamphetamine for the purpose of sale (Health & Saf. Code, § 11378, subd. (a) [count 5]). Related to counts 4 and 5, the People alleged the methamphetamine in each charge exceeded four kilograms by weight or 100 liters by liquid volume. (Health & Saf. Code, § 11370.4, subd. (b)(2)).

In May 2011, defendant pleaded no contest to counts 1-4 and admitted the methamphetamine in count four exceeded four kilograms by weight or 100 liters by liquid volume. In exchange for his plea, the People moved to dismiss count 5 and strike the remaining enhancement; the trial court granted the People's motion. The parties agreed defendant would be sentenced to 11 years in state prison.

There is no reporter's transcript of the plea; however, in his written plea agreement, among other things, defendant acknowledged the immigration consequences of his plea: "I understand that if I am not a citizen of the United States, I will be deported from the country, denied citizenship, and denied re-entry into the United States." Defendant indicated that he offered his "plea of guilty or no contest freely and voluntarily and with full understanding of everything in this form."

Defendant executed a statement in the written plea agreement, which said: "I have read or have had read to me this form and have initialed each of the items that applies to my case. If I have an attorney, I have discussed each item with my attorney. By putting my initials next to the items in this form, I am indicating that I understand and agree with what is stated in each item that I have initialed. The nature of the charges, possible defenses, and the effects of any prior convictions, enhancements, and special allegations have been explained to me. I understand each of the rights outlined above, and I give up each of them to enter my plea."

Defendant's counsel also executed a statement in the written plea agreement, which said: "I am the attorney for the defendant. I reviewed this form with my client. I have explained each of the items in the form, including the defendant's constitutional and statutory rights. I have answered all the defendant's questions with regard to those rights,

2

the other items in this form, and the plea agreement.  I have discussed the facts of the case and explained the consequences of the plea.  I have discussed the nature and elements of the offenses, allegations and enhancements, any possible defenses to them, the effect of any prior convictions, allegations and enhancements, and the consequences of the plea."

The written plea agreement included an interpreter's statement, executed by a Spanish language interpreter.  The interpreter stated, under oath, that he "truly translated this form . . . .  The defendant stated that he . . . understood the contents on this form and then initialed and signed the form."  The prosecutor concurred in the plea agreement and the court found defendant read and understood the written plea agreement, understood the consequences of the plea, and knowingly waived his constitutional and statutory rights.  The court thus sentenced defendant to an aggregate term of 11 years in state prison in accordance with the plea agreement.

### Motion to Vacate Defendant's Convictions

On September 16, 2024, defendant filed a motion to vacate his conviction pursuant to Penal Code section 1473.7 (statutory section citations that follow are to the Penal Code unless otherwise stated) on the ground that he "did not fully understand the consequences of his plea, and had he understood the consequences[,] he would not have entered [into] the plea."

In his own declaration, defendant averred that he had been living in the United States since 1984, most of his life.  His family, including his children and grandchildren are here.  He was not familiar with the criminal process when he entered into the plea agreement.  He was advised that his conviction "would be a problem with immigration" but "believed . . . [he] still had a chance to win [his] immigration court case."  Had defendant understood the "serious and final immigration consequences" of his

3

convictions, he "would likely have gone to trial, instead of entering the plea, and essentially agreeing to leave the country and my family."

The People opposed the motion. In support of their opposition, the People argued defendant "by his own initials and signature" acknowledged his conviction "would in fact result in his deportation from the country." In addition, both the trial court and defense counsel explained to defendant the consequences of his plea agreement, which included deportation. The People also argued defendant offered nothing more than his own "meaningless assertions" to support defendant's claim that he would not have entered into the plea agreement had he known the immigration consequences.

The trial court heard defendant's motion on November 1, 2024. No additional evidence was submitted. The court noted that defendant's conviction was the result of law enforcement finding him with 19 pounds of methamphetamine, for which defendant had negotiated a price of approximately $275,000. Accordingly, the court found defendant was participating in a "sophisticated drug smuggling operation . . . not a case involving a few dime-sized baggies." Defendant was "intellectual, . . . not a low level street dealer with no common sense."

Moreover, when executing the plea agreement, defendant said he understood the consequences of the plea, including the immigration consequences. And "the plea form clearly indicates that the defendant will be deported. It's not could or possible, it[] specifically states he will be deported." The trial court also noted that, in addition to having a Spanish language interpreter, defendant's trial counsel was "well versed in the Spanish language [and] was clearly able to converse with . . . defendant."

The trial court also found relevant the length of time between defendant's first appearance in court and the date he entered his plea, which indicated this was not "some rash or hurried plea." Defendant had four months to discuss the plea with counsel, including the plea's consequences. Defendant, by his own admission, knew the plea "would be a problem with immigration." Thus, the court ruled, "when the court balances

4

the totality of the circumstances with the defendant's subjective belief, for all of those reasons the court finds that the defendant's self-serving statement just does not overcome the totality of the circumstances here." The court denied the motion.

DISCUSSION

<u>Legal</u> <u>Principles</u>

"To prevail under section 1473.7, a defendant must demonstrate that his conviction is 'legally invalid due to prejudicial error damaging [his or her] ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence.' " (*People v. Espinoza* (2023) 14 Cal.5th 311, 319 (*Espinoza*); see also § 1473.7, subd. (a)(1).) That requires a defendant to make two showings: "first[,] that he did not meaningfully understand the immigration consequences of his plea"; and second, "that his misunderstanding constituted prejudicial error." (*Espinoza*, at p. 319; see *People v. Vivar* (2021) 11 Cal.5th 510, 517 (*Vivar*); see also § 1473.7, subd. (a).) "[T]he burden rests with the defendant to establish entitlement to relief." (*Espinoza*, at p. 325.)

We independently review the trial court's disposition of a section 1473.7 motion. (See *People v. Lopez* (2022) 83 Cal.App.5th 698, 710.) Under that standard, we " ' "exercise[] [our] independent judgment to determine whether the facts satisfy the rule of law." ' " (*Espinoza*, *supra*, 14 Cal.5th at pp. 319-320.) We "give deference to the trial court's factual determinations if they are based on ' " 'the credibility of witnesses the [trial court] heard and observed,' " ' " but we do not owe deference if "the trial court's findings 'derive entirely from written declarations and other documents.' " (*Id*. at p. 320; see *Vivar*, *supra*, 11 Cal.5th at p. 527 [independent review " ' "is not the equivalent of de novo review" ' "].)

<u>Consequences</u> <u>of</u> <u>His</u> <u>Plea</u>

The record supports the trial court's finding defendant understood he would be deported because of his 2011 plea. Before entering his plea, defendant initialed and signed a plea form, which said, "I understand that if I am not a citizen of the United States, *I will be deported* from the country." (Emphasis added.) (See *People v. Bravo* (2023) 69 Cal.App.5th 1063, 1073 [advisement for those with serious offenses mandating deportation must state " 'that they will be deported . . . as a *mandatory* consequence' "].) Defendant cannot "simply ignore the admonitions he was given about the consequences of the plea[] and argue that he unilaterally assumed he would be treated in direct contravention of what he was advised orally and in writing." (*People v. Abdelsalam* (2022) 73 Cal.App.5th 654, 663 (*Abdelsalam*).)

The only evidence suggesting defendant did not understand the immigration consequences of his plea is his own declaration to that effect. But this is insufficient by itself: "A defendant seeking to set aside a plea must do more than simply claim he did not understand the immigration consequences of the plea. The claim must be corroborated by evidence beyond the defendant's self-serving statements." (*Abdelsalam*, *supra*, 73 Cal.App.5th at p. 664.) Defendant failed to corroborate his account with any independent evidence. On the contrary, the record reflects trial counsel reviewed the plea form with his client and discussed the consequences of the plea.

Defendant nevertheless claims the trial court's decision failed to give sufficient weight to defendant's strong ties to the United States and lack of criminal history. The record does not support his claim. The court expressly considered all of defendant's circumstances. The court knew of defendant's criminal history and ties to the United States. The court also found defendant to be an intelligent person who was operating a sophisticated drug smuggling scheme. Defendant also was represented by counsel who spoke Spanish and was assisted by a Spanish language interpreter. On balance, the court

ruled, these circumstances weighed in favor of finding defendant failed to meet his burden of proof.  We do not disagree.

In sum, defendant failed to carry his burden to demonstrate, by a preponderance of the evidence, that he did not meaningfully understand the consequences of his plea.  (See *Abdelsalam*, *supra*, 73 Cal.App.5th at pp. 664-665.)

DISPOSITION

The trial court's order is affirmed.


\_\_\_\_\_/s/_____
HULL, J.

We concur:


\_\_\_\_\_/s/_____
EARL, P. J.


\_\_\_\_\_/s/_____
MAURO, J.

7